IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Criminal Action No. |
| v. ) | 09-00178-01-CR-W-HFS |
| ) | |
| DUSTY COX, ) | |
| ) | |
| Defendant. ) | |

**ORDER**

Before the court is defendant's most recent letter requesting medical treatment while in custody. For the following reasons, defendant will be released on bond.

*I. BACKGROUND*

On June 2, 2009, an indictment was returned charging defendant with possessing a firearm and ammunition after having been convicted of multiple felonies, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1). Defendant initially appeared before Judge John Maughmer on June 15, 2009. He was released on bond after a detention hearing on June 18, 2009. The following day, the government moved to reopen the detention hearing after learning from another inmate that defendant had threatened to put a hit out on the judge if he were not released. On June 25, 2009, Judge Sarah Hays held a show cause hearing. After considering the additional evidence, she detained defendant without bond on July 7, 2009.

On July 8, 2009, I entered an order setting a hearing on defendant's medical condition as a result of representations made by defense counsel in a motion to continue the trial. The motion to continue stated in part as follows:

> 6.  Counsel is aware that defendant has a myriad of health problems and prescription medications that he needs for complications from a broken back sustained in June of 2008. Because these medications are controlled substances, such as oxycontin and hydrocodone, he is not allowed to receive them at CCA in Leavenworth where he is currently housed. Counsel had asked Magistrate Judge Hays at the show cause hearing that if pretrial detention is ultimately ordered, then would the Court recommend placement at the Federal Medical Center in Springfield pending trial of this matter. If detention is not ordered, defendant has a scheduled surgery in September, 2009, to remove titanium rods from his back and fuse his spine together. This surgery is scheduled at St. Joseph Health Center in Kansas City, Missouri. . . .

In my order setting the hearing on defendant's medical condition, I ordered "the United States Marshal [to] have a representative present at the hearing who has obtained information about defendant's surgical and medicinal options while in custody."

The hearing began on July 16, 2009, and was continued until July 21, 2009, so that Dr. Bowlin from CCA could testify. In court, I stated that Dr. Bowlin should be present telephonically, that a representative of the United States Marshal Service should be present, and that someone from CCA who has complete knowledge of defendant's medical history since being placed in custody should also be present. The U.S. Marshal was ordered to

2

coordinate the release of defendant's medical records which were to be faxed to chambers for distribution to the parties.

Cathy Martin, Health Services Administrator at CCA, was present at the hearing. She stated that, with regard to the infection in defendant's spinal cord, his records show he was supposed to be taking Doxycycline, an antibiotic, as of June 16; however, there were no records of that antibiotic having been dispensed. Defendant was released from custody on June 16 after he satisfied the original conditions of release. Defendant was returned to custody on June 19, 2009. The records show that he began taking the prescribed antibiotic on July 8, 2009, but he was not given any antibiotic from June 19 through July 8, 2009.[1]

Prior to being taken into custody, defendant was being treated with Oxycontin, a narcotic. At CCA he was given Ibuprofen, an anti-inflammatory, 600 mg per day (an over-the-counter dosage). Although CCA tries to limit dispensing narcotics, the doctor actually decides whether a narcotic is needed and will dispense a narcotic if necessary.

Dr. Bowlin stated that defendant had been offered an observation cell in Medical, but he declined, in part because of his concern about his exposure to infections. Defendant had recently been diagnosed with methicillin resistant staph aureus

---

[1] Dr. Bowlin was not aware that defendant did not receive the antibiotic during those weeks. See p. 21 of the transcript of the July 21, 2009, hearing (document number 32-33).

3

and was seeing an infectious disease specialist.  Had he taken
the transfer to Medical, the doctor would have considered writing
him a prescription for narcotic pain medication.  Defendant's
history of narcotics abuse would be considered before that
decision was made, however.  Because defendant did not accept the
transfer to Medical, he was given a prescription for Neurontin,
which is a non-narcotic pain reliever.

   At the conclusion of that hearing, defendant stated that he
was willing to be transferred to the Medical unit.  I directed
the United States Marshal to make sure that happened as soon as
possible.  I do not know whether defendant was ever transferred
to the Medical unit.

   On August 11, 2009, I entered an order denying defendant's
motion to reconsider detention.  The order states in part as
follows:

> The record establishes that defendant is unemployed, he
> began receiving SSI about two or three months ago with a
> monthly income of $674.  He has no financial assets or
> liabilities other than back child support.  He has a history
> of illegal drug use, and has current prescriptions for
> narcotic drugs.  He is facing a mandatory 15-year minimum
> prison sentence with a possibility of life in prison.  At
> the time the firearm and ammunition were found in
> defendant's residence, he attempted to flee out the back
> door of the residence and swallowed three Oxycontin pills (a
> narcotic).  He allegedly told another inmate that he would
> "go on the run" because he had promised his mother he would
> not return to prison.  This evidence establishes by a
> preponderance of the evidence that defendant poses an
> unreasonable flight risk.
> The evidence further establishes that defendant has a
> criminal history spanning more than 12 years and including
> three felony convictions.  He has had probation revoked in

4

the past after committing a new criminal offense, associating with a known felon, using crack cocaine, and failing to pay fees. Defendant threatened to have two law enforcement officers shot and killed, and he threatened to put a hit on a federal judge if he was not granted bond. This evidence establishes by clear and convincing evidence that defendant poses an unreasonable danger to the community.

On October 16, 2009, defendant filed a second motion to reconsider detention, pointing out that the inmate who provided the information about defendant threatening to put a hit on law enforcement and a judge was incarcerated on a murder charge, and that he had recanted his statement about defendant's threats. I held a hearing on October 20, 2009. During the hearing the inmate's counsel stated that the inmate recanted because he was told something bad would happen to him if he did not. Since the veracity of his statement was in question, I decided not to consider that evidence but denied the motion for bond based on the remaining issues outlined in my previous order.

Defendant's medical situation had been addressed during the hearing as well. Deputy Marshal Cunningham advised that CCA had ordered the foam mattress and wedge, but it had not yet arrived. CCA also had stated that it had provided defendant with access to a wheelchair. Deputy Marshal Cunningham further stated that the lapse in defendant's medication was related to Dr. Bowlin's departure from CCA, but that CCA had hired a new physician and a procedure was in place by which defendant's medications would be ordered without defendant making a request.

5

On October 27, 2009, defendant entered a guilty plea. No sentencing date has been set.

On December 2, 2009, I received a letter written by defendant. The letter was undated,[2] but the envelope was postmarked November 27, 2009 (the Friday after Thanksgiving). Defendant stated that the Neurontin he was taking had the side effect of back pain, which was intolerable due to defendant's history of a broken back. Defendant complained about the doctor who replaced Dr. Bowlin, i.e., that he finally saw the new doctor on November 23, 2009; was told that the doctor could not prescribe any narcotic medications; and after 3 1/2 minutes, was told the doctor was late for another appointment. Defendant also stated in the letter that he had not seen his infectious disease doctor in the past six months when he previously saw that doctor twice a month.

I entered an order on December 2, 2009, setting a hearing for December 8, 2009. The order states in part as follows: "A representative from CCA shall attend the hearing, bring defendant's medical records, and be able to explain the records and answer any questions about the records and defendant's treatment." A copy of that order was forwarded to the United

---

[2]In the letter, defendant refers to "this afternoon 11-23-09", which was the Monday before Thanksgiving.

6

States Marshal's office, who provided a copy of the order to CCA and contacted CCA to make sure the order was understood.

On December 8, 2009, I attempted to hold the hearing on defendant's complaints. Defense counsel Lisa Nouri stated that on November 28 (the Saturday after Thanksgiving), she received a call from defendant's mother who said defendant was in severe pain. Ms. Nouri told defendant's mother to have defendant report his severe pain to the staff at CCA. On Monday afternoon, November 30, Ms. Nouri received another call from defendant's mother stating that defendant was in intense pain. Ms. Nouri called CCA and spoke to Cathy Martin, the head nurse. Ms. Nouri asked Ms. Martin to please meet with defendant. She told Ms. Martin about the phone call she had received from defendant's mother two days earlier. Ms. Martin assured Ms. Nouri that she would speak with defendant and address the situation. While they were talking, Ms. Martin pulled defendant's file out and remarked that one of defendant's pain medications was being dispensed once a day instead of twice a day as directed. She said she would get that fixed. Ms. Nouri stated that Ms. Martin was referring to Ibuprofen.

A week later, on December 7, 2009, Ms. Nouri went to CCA to meet with other clients. She spoke to Ms. Martin, reminded her again that defendant's hearing was coming up, and asked to meet with Ms. Martin who indicated she would be there all day. When

7

Ms. Nouri was finished meeting with her clients, she was unable to reach Ms. Martin by phone, and Ms. Martin did not return Ms. Nouri's calls.

When Ms. Nouri arrived for the hearing this morning, she learned from defendant that Ms. Martin did not meet with him until December 5 (five days after her conversation with Ms. Nouri about defendant's severe pain over the Thanksgiving weekend).

Ms. Martin did not appear in court. Instead, a physician's assistant was present. Despite the order directing the CCA representative to bring defendant's medical records, the physician's assistant had no records. He was not familiar with defendant's case and was therefore unable to answer any questions.

During the hearing, defendant stated that he was being given Neurontin, which he believed to be a four-hour pain medication, at 4:30 a.m. and approximately 9:00 p.m. He stated that he had at one time asked Dr. Bowlin to increase his dosage. Dr. Bowlin stated that he would not raise defendant's dosage beyond 1,200 mg per day. Now, however, defendant is being given 1,500 mg. twice a day, which is about 2 1/2 times more than the maximum dosage according to defendant's understanding of Dr. Bowlin's explanation. Defendant believes the increased dosage of Neurontin is contributing to his severe back pain.

8

## II. CONCLUSION

Under the Due Process clause, pretrial detainees enjoy a constitutional right "not to have their serious medical needs met with deliberate indifference on the part of confining officials." United States v. Gonzalez, 436 F.3d 560, 573 (5th Cir.), cert. denied, 547 U.S. 1139 (2006). Once detainees have advanced beyond the pretrial stage, the Eighth Amendment ensures this right. Boring v. Kozakiewicz, 833 F.2d 468, 471 (3d Cir. 1987).

In this case, although CCA was not only given the opportunity but was ordered to provide information about defendant's medical condition, it chose to ignore my order. Therefore, I am left with uncontradicted allegations by the defendant and his counsel that defendant's serious medical needs are not being met by his confining officials.

In light of this, I have reconsidered my original concerns in denying defendant's request for bond. Given defendant's medical condition, which requires that he use a wheelchair, it is unlikely that he remains an unreasonable flight risk or an unreasonable danger to the community. Defendant's criminal history prior to his summer 2008 broken back appears to be less relevant given his current disability. Therefore, it is

ORDERED that defendant is released on a personal recognizance bond. Defendant's release is subject to the conditions outlined in court and by Pretrial Services. Defendant

9

is directed to address the outstanding child support warrant as discussed in court.

                                          */s/ Robert E. Larsen*
                                          ROBERT E. LARSEN
                                          United States Magistrate Judge

Kansas City, Missouri
December 8, 2009